ORIGINAL

FILED
2003 NOV 12 P 3:53

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

HALOX TECHNOLOGIES, INC.

V.

DRIPPING WET WATER, INC.,
RICHARD SAMPSON and
ALLISON SAMPSON

No. 3:03cv01008 (SRU)

November 12, 2003

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

Defendants Dripping Wet Water, Inc. ("DWW"), Richard Sampson, and Allison Sampson have moved, under Rule 12(b)(6) Fed. R. Civ. P., to dismiss the First, Second, and Third Counts of the First Amended Complaint, on grounds that those counts fail to state a claim upon which relief can be granted. Specifically, these counts, alleging conversion and unjust enrichment arising out of a claimed theft of plaintiff's proprietary technology, are preempted by the Connecticut Uniform Trade Secrets Act ("CUTSA"), Conn. Gen. Stat. §35-50 et seq., a statute which plaintiff has invoked in this lawsuit.

### Nature of the Proceedings and Factual Background

This is a claim by the former employer[1] of defendants Richard and Allison Sampson and their new business, Dripping Wet Water, Inc. ("DWW"). Halox, which is in the business of water purification, charges the Sampsons with using Halox's technology in

---

[1] Although the current plaintiff, Halox Technologies, Inc. is alleged to be the successor in interest of the Sampsons' employer, Halox Technologies Corporation, see First Amended Complaint ("Cmplt."), at §§54-57, the effectiveness of that transfer is not at issue for purposes of this motion, and the term "Halox" will therefore be used to refer to the plaintiff and the Sampsons' former employer interchangeably.

their new venture, in violation of their Employment Agreements and Fidelity and Non-Competition Agreements. The eleven counts fall into four categories, all having as their common theme the alleged theft of Halox's technology: "conversion, unjust enrichment, and establishment of a constructive trust" (First, Second, and Third Counts, against all three defendants); breach of contract (Fourth and Fifth Counts, against the Sampsons); the Connecticut Unfair Trade Practices Act ("CUTPA") (Sixth, Seventh, and Eighth Counts, against all three defendants); and CUTSA (Ninth, Tenth, and Eleventh Counts, against all three defendants).

At the time of the execution of their employment agreements in May, 1998, Richard Sampson was made Chairman and Chief Executive Officer of Halox, and Allison Sampson was made Executive Vice President of Halox. Cmplt. §§11, 25. During their employment with Halox, "information deemed confidential and proprietary and otherwise trade secret by Halox Technologies Corporation concerning the Halox Technology was disclosed" to them. Cmplt. §§22 (Richard) & 36 (Allison). Under the material terms of their agreements with Halox, the Sampsons, in essence, agreed not to compete with Halox for a period of one year from the time of their termination, Cmplt. §§17 & 31, and that any inventions conceived or reduced to practice within six months of their departure would be presumed to have been made during their employment. Cmplt. §§19 & 33. Over one year after their termination of employment from Halox in August, 2000, the Sampsons incorporated, on September 11, 2001, DWW. Cmplt. §§39 & 40. DWW is alleged to compete with Halox,

2

in that it offers for sale products claimed to use Halox Technology. See Cmplt. §§9-10, 50-53.

On or about August 2, 2001, the Sampsons filed a U.S. patent application which is alleged to be "relating to the Halox Technology and claiming inventions of, incorporating or based upon the Halox Technology that had been disclosed to [them] during their respective employment with Halox...." Cmplt. §41. In addition, plaintiff alleges that the Patent Application, made public by the United States Patent and Trademark Office on April 3, 2003, "contains information that Halox held as a trade secret." Cmplt. §45. DWW and the Sampsons are also charged with marketing at a trade show, and afterwards, products "that were designed and manufactured, in whole or in part, using Halox Technology." Cmplt. §§50-53.

## Argument

### I.     The Standard Governing This Motion.

This Court has summarized the familiar standard governing a motion to dismiss for under Rule 12(b)(6) for failure to state a claim upon which relief can be granted as follows:

> When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must construe any well pleaded factual allegations in the plaintiff's favor. See Albright v. Oliver, 510 U.S. 266, 268, 127 L.Ed. 2d 114, 114 S. Ct. 807 (1994); Boyd v. Nationwide Mut. Life Insurance Co., 208 F.2d 406, 409 (2d Cir. 2000). In addition, the court must draw all reasonable inferences in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974). Dismissal is not warranted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S.

> 41, 45-56, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957); see also <u>Kittay v. Kornstein</u>, 230 F.3d 531, 2000 WL 1553213 [**5] at *4 (2d Cir. 2000). The issue on a motion to dismiss "is not whether the plaintiff will prevail, but whether he is entitled to offer evidence to support his claims." <u>United States v. Yale New Haven Hosp.</u>, 727 F.Supp. 784, 786 (D. Conn. 1990) (citing <u>Scheuer</u>, 416 U.S. at 236).
>
> Under Rule 12(b)(6), a court may dismiss a claim for either "(1) the lack of a cognizable legal theory; or (2) the absence of factual assertions to support a claim." <u>Titan Sports, Inc. v. Hellwig</u>, 1999 U.S. Dist. LEXIS 10523, 1999 WL 301695 at *5 (D. Conn. 1999) (citations omitted). "To withstand a motion to dismiss, a complaint must allege facts setting forth all of the essential elements of a viable legal theory. . . ." Id. at 12. Bald assertions and conclusions of law unsupported by factual allegations will not defeat a motion to dismiss, despite the liberal pleading standard. Id.; <u>De Jesus v. Sears</u>, 87 F.3d 65, 70 (2d Cir. 1996); <u>Leeds v. Meltz</u>, 85 F.3d 51, 53 (2d Cir. 1996). In deciding such a motion, a district court must "limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits and documents incorporated [**6] by reference in the complaint." <u>Hayden v. County of Nassau</u>, 180 F.3d 42, 54 (2d Cir. 1999).

<u>In re Vasu</u>, 129 F. Supp.2d 113, 116 (D. Conn. 2001)(Underhill, J.).

Here plaintiff's claims under the common law for unjust enrichment, conversion, and imposition of a constructive trust (Counts One, Two and Three) are preempted by CUTSA, Conn. Gen. Stat. §35-57 and, accordingly, fail to state a claim upon which relief can be granted.

**II.    Plaintiff's Conversion and Unjust Enrichment Claim is Preempted by CUTSA.**

Any fair reading of the First Amended Complaint shows that plaintiff's charge against the Sampsons is that they took trade secrets from the Halox lab and put them to use in their new venture, DWW, through their new patent application and otherwise. <u>See generally</u>, Cmplt.; Nature of Proceedings and Factual Background, supra. The law

4

provides a remedy for such conduct, if plaintiff can prove it, and plaintiff has invoked that remedy, CUTSA. The statute unambiguously provides, however, that it preempts ("supersede[s]") certain other claims:

> Unless otherwise agreed by the parties, the provisions of this chapter supersede any conflicting tort, restitutionary, or other law of this state pertaining to civil liability for misappropriation of a trade secret.

Conn. Gen. Stat. §35-57(a). The statute does not effect, however "[c]ontractual or other civil liability or relief that is not based upon misappropriation of a trade secret ...." Conn. Gen. Stat. §35-57(b)(1).

Here, the identical Counts One through Three (conversion/unjust enrichment/constructive trust) are superseded by the statute, Conn. Gen. Stat. §31-50 et seq. The allegations of the three (materially identical) conversion/unjust enrichment claims plainly "conflict" with CUTSA in that they are "based upon" misappropriation of a trade secret. See Conn. Gen. Stat. §35-57. In those Counts, plaintiffs allege that defendants:

- "[k]nowingly and intentionally exerted control over, and converted for [their] own use, Halox's ideas, designs, developments, inventions and information relating to the Halox Technology"; Cmplt. §§59, 67, 75;

- which taking was not "authorized or agreed to by Halox"' Cmplt. §§60, 68, 76; and

- by "taking and/or conversion of Halox's ideas, designs, developments, inventions and information relating to the Halox Technology," and "[b]y filing patent applications claiming Halox's inventions as [their] own";

5

have retained a benefit to the detriment and damage of Halox. See Cmplt. §§61-64; 69-72; 76-80.

Later, when plaintiff asserts its claims under CUTSA, it simply realleges all of the preceding allegations of the First Amended Complaint (including not only the conversion/unjust enrichment counts but also the breach and CUTPA counts) and then offers the summary conclusion that each defendant "has misappropriated trade secrets of Halox in violation of Conn. Gen. Stat. §35-50 et seq." See Cmplt. Counts Nine, Ten, and Eleven; §§98 (Richard); 102 (Allison); and 106 (DWW).

Judge Arterton has addressed this very question, the conflict between CUTSA and an unjust enrichment claim. See On-Line Technologies, Inc. v. Perkin Elmer Corp., 141 F. Supp.2d 246, 261 (D. Conn. 2001). There the defendants moved for judgment on the pleadings, under Rule 12(c)[2], and the Court dismissed the common law claim, based on its conclusion that the claim was "preempted by CUTSA." Id. at 260.

After noting that the Connecticut courts had not addressed the issue, Judge Arterton reviewed other authorities from jurisdictions having enacted the Uniform Trade Secrets Act and found support for preemption:

> [A] number of other courts in states whose statute mirrors the Uniform Trade Secrets Act have concluded that unjust enrichment claims are preempted when the claim depends on the information at issue being deemed a trade secret. See Frantz v. Johnson, 999 P.2d 351 (Nev. 2000)(where unjust enrichment claim arose from single factual episode of misappropriation of bidding and pricing information, claim was preempted, because unjust

---

[2] As Judge Arterton noted, "[t]he standard for deciding a motion pursuant to Rule 12(c) for judgment on the pleadings is the same as the one applicable to a motion to dismiss under Rule 12(b)(6)." 141 F. Supp.2d at 255.

>nature of the claim was dependent on facts concerning misappropriation of trade secrets); Micro Display Systems, Inc. v. Axtel, Inc., 699 F. Supp. 202, 205 (D. Minn. 1988)("To the extent a cause of action exists in the commercial area not dependent on trade secrets, that cause of action [for unjust enrichment] continues to exist").

On-Line, 141 F. Supp.2d at 261.

In On-Line, as here, the factual overlap of the two claims precluded the plaintiff from bringing a separate common law claim: "[B]ecause OLT's [plaintiff] unjust enrichment claim does not allege any ill-gotten gains other than those resulting from the misuse of confidential information, OLT cannot bring a stand alone claim for unjust enrichment." Id. at 261. Neither the plaintiff in On-Line, nor Halox in this case, alleged "the rendering of services without compensation, the wrongful retention of property, or the taking of anything other than the information at issue in this case." Id. at 261 (emphasis added). Accordingly, these Counts, based as they are on the claimed misappropriation, are preempted.

Nor did the fact that the plaintiff in On-Line sought an equitable remedy as part its unjust enrichment claim (just as plaintiff Halox does here) save the cause of action from dismissal: "[p]laintiff cites no case law addressing this proposition, and the Court cannot locate any precedent which would support such an argument." Id. at 260. In any event, Judge Arterton observed that plaintiff "still has recourse to unjust enrichment as an element of recovery under CUTSA, to the extent those damages are not accounted for in calculating actual losses." Id. at 262 (citing Conn. Gen. Stat. §35-53, which provides that

"a complainant may recover for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss.")

Although plainly couched in the language of unjust enrichment, plaintiff does attach to these counts the additional label of "conversion."[3] But a claim for conversion falls squarely within the scope of the statutory preemption. In <u>Automed Technologies, Inc. v. Eller</u>, 160 F. Supp. 2d 915 (N. D. Ill. 2001), the court addressed a preemption claim under the Illinois enactment of the Uniform Trade Secrets Act and concluded that a conversion claim was barred:

> Count 11 is a conversion claim, alleging that defendants assumed unauthorized control over plaintiff's property. The property in question, however, is software and design plans. These are among the trade secrets that were allegedly misappropriated. Although these items exist in tangible form, their value is primarily from the information contained within that form. See Thomas & Betts Corp v. Panduit Corp., 108 F. Supp. 2d 968, 973 (N.D. Ill. 2000). This claim is really just another way of charging that defendants took AutoMed's secret information, for which ITSA is the exclusive remedy.

---

[3] Plaintiff also incorporates into the title of these three counts the phrase "Establishment of a Constructive Trust." But a constructive trust is not a cause of action so much as a restitutionary equitable remedy available upon proof of unjust enrichment and a special relationship between the parties. See <u>Filosi v. Hawkins</u>, 1 Conn. App. 634, 638-39 (1984).

> The imposition of a constructive trust by equity is a remedial device designed to prevent unjust enrichment. 5 Scott, op. cit. § 462. Thus, a constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. See, e.g., Chemo v. Dutch American Mercantile Corporation, 353 F.2d 147, 153 (2d Cir. 1965); Mellon National Bank & Trust Co. v. Esler, 357 PA. 525, 528-29, 55A.2d 327 (1947); Restatement, Restitution (1937) § 160; 5 Scott, op. cit. §§ 462, 462.2; 30 C.J.S., Equity § 95, p. 1028.

<u>Cohen v. Cohen</u>, 183 Conn. 193, 203 (1980). By its terms CUTSA supersedes "any conflicting tort, <u>restitutionary</u>, or other law of this state pertaining to civil liability for misappropriation of a trade secret." Conn. Gen. Stat. §35-57(a)(emphasis added). Accordingly, the "constructive trust" label does not save these counts from preemption.

160 F. Supp.2d at 922. Likewise here, the allegations of Counts One, Two, and Three, if viewed as alleging claims for common law conversion, are in direct "conflict" with CUTSA and are preempted; indeed, it is difficult to posit a common law claim more directly "conflicting" with CUTSA than one for conversion.

## Conclusion

For the foregoing reasons, defendants respectfully request that their motion be granted, and that Counts One, Two, and Three of the First Amended Complaint be dismissed.

Edward R. Scofield (ct00455)

Zeldes, Needle & Cooper, P.C.
1000 Lafayette Blvd., Suite 500
Bridgeport, CT 06604
Tel: (203) 333-9441
Fax: (203) 333-1489
e-mail: escofield@znclaw.com

Attorney for Defendants

## CERTIFICATION

This is to certify that a copy of the foregoing has been sent via U.S. First Class Mail, postage prepaid, on this date, to:

>Michael J. Rye, Esq.
>Charles F. O'Brien, Esq.
>Cantor & Colburn LLP
>55 Griffin Road South
>Bloomfield, CT 06002

Dated at Bridgeport, Connecticut on this 12th day of November, 2003.

_____
Edward R. Scofield